Roland Jerome MADDEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–94–142–CR.

Court of Appeals of Texas,
Waco.

Nov. 22, 1995.

Discretionary Review Refused Jan. 24, 1996.

Kathi A. Drew, Dallas, for appellant.

John Vance, Criminal District Attorney, Lori L. Ordiway, Howard Blackmon & Kelly Thompson, Assistant District Attorneys, Dallas, Robert Huttash, State Prosecuting Attorney, Austin, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

A jury convicted the appellant, Roland Jerome Madden, of aggravated assault, enhanced by two prior convictions, and assessed punishment at life in prison. TEX.PENAL CODE ANN. § 22.02 (Vernon 1991). Madden raises nine points of error on appeal. For the following reasons, we will affirm.

On the evening of April 17, 1993, Antrum Donell and Damon Jerome Bell were visiting Bell's girlfriend, Kim, at her apartment. Bell had brought a neighbor's dog for Kim to play with.[1] Madden and Kim's sister, Kasandra arrived some time thereafter with their four-month-old baby. At trial, Bell testified that Madden became angry because he was apparently concerned about the safety of his baby around the animal. However, there was some evidence that the dog was not even in the same room as the baby. Bell then told Madden that he would take the dog home.

Madden and Kasandra went outside where they began to argue. Promptly thereafter, Bell and Donell left the apartment to take the dog back home, and Kasandra went back inside. As Bell headed to his car, Madden and Donell began to argue with each other. Bell walked over to the two men and explained to Madden that he was not trying to put the baby in any danger and that they were taking the dog home. There was testimony that Donell and Bell both tried to calm Madden down. Madden then asked Donell, "What's up?", which according to the testimony is slang basically for, "Do you want to fight?" According to the record, Donell and Madden both repeated the phrase to each

---

1. At trial, there was conflicting evidence as to the size, type, and age of the dog. Madden and his girlfriend claimed that Bell had brought a full grown Rottweiler into the apartment, while several other witnesses claim that the dog was actually a three to four month old puppy of Rottweiler and Doberman mix.

other. Bell testified that he then brought Donell over to his car to calm the situation down so they could leave. As Bell and Donell began to walk to their respective cars to leave, they heard Madden say, "What's up now?" Donell and Bell turned around and saw that Madden had pulled a gun out. Madden then fired three or four shots at Donell, hitting him once in the left hip. Madden then fled the scene in his car. Bell yelled for someone to call 911, because Donell was bleeding heavily and beginning to lose consciousness. When the police arrived, Bell accompanied the officers to show them where Madden lived. When they returned to Kim's apartment, Madden telephoned the apartment and Bell picked up the phone. He motioned for Officer Park of the Dallas Police Department to pick up the other line so he could listen to the conversation. According to Park's testimony, Madden stated that Donell "deserved what he got." He also said that he was leaving Texas and that "if any police tried to stop him he would kill 'em." Madden was subsequently indicted for aggravated assault and sentenced to life imprisonment.

In his first three points of error, Madden contends that the failure of the trial judge, Janice Warder, to recuse herself sua sponte violated his due-process rights under the federal constitution and his due-course-of-law rights under the state constitution. U.S. CONST.amend. V; TEX. CONST. art. I, § 19. Madden's arguments under these first three points of error are confusing because he seems to argue interchangeably both that Judge Warder should have recused herself and that she should have been disqualified. In the interest of justice, we will address both contentions. We consider the recusal argument first.

██ Madden has failed to preserve his complaint concerning recusal. Madden did not file a motion to recuse Judge Warder at trial. Madden acknowledges that Rule 18(a) of the Texas Rules of Civil Procedure applies, which requires a party to file a motion to recuse at least ten days before trial begins. TEX.R.CIV.P. 18a; *See Arnold v. State,* 853 S.W.2d 543, 544–45 (Tex.Crim.App.1993) (finding that Rule 18a applies in criminal

proceedings). However, Madden relies on *Martin v. State,* 876 S.W.2d 396, 397 (Tex. App.—Fort Worth 1994, no pet.), in arguing that the failure to make such a motion under Rule 18a does not necessarily waive the complaint. In *Martin,* the appellant did not discover the possible grounds for recusal of the trial judge until well into the trial. *Id.* at 397. Appellant promptly made a motion to recuse, which the judge denied on the grounds that appellant did not meet the requirements of Rule 18a. *Id.* The Fort Worth Court of Appeals reversed, holding that 18a does not apply in those situations where a party cannot know the basis of recusal until such a motion is no longer timely. *Id.*

Madden claims that this holding applies in the present case. However, Madden failed to make a motion to recuse at any time during the trial, even though he became aware of the possible grounds for recusal at the punishment phase of the trial. *Martin* does not hold that error is preserved when the motion to recuse is raised for the first time at the appellate level. TEX.R.APP.P. 52(c); *Johnson v. State,* 871 S.W.2d 183, 191 (Tex.Crim.App.1993) (stating that an argument raised for the first time on appeal is not preserved for appellate review). Therefore, his recusal point is waived.

Madden also argues that Judge Warder should be removed on disqualification grounds. Sections of both the Texas Constitution and the Texas Code of Criminal Procedure are relevant to a discussion of disqualification. Article V, section 11, of the Texas Constitution provides:

No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case.

TEX. CONST. art. V, § 11.

Article 30.01 of the Texas Code of Criminal Procedure provides:

No judge or justice of the peace shall sit in any case where he may be the party injured, or where he has been of counsel for

the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity within the third degree.

TEX.CODE CRIM.PROC.ANN. art. 30.01 (Vernon 1989).

█ The Court of Criminal Appeals has held that the grounds of disqualification stated in the Texas Constitution and the Code of Criminal Procedure are exclusive. *See Elam v. State,* 841 S.W.2d 937, 939 (Tex.App.— Austin 1992, no pet.). These provisions have been held to be mandatory. *Gamez v. State,* 737 S.W.2d 315, 318 (Tex.Crim.App.1987). It is not necessary that an objection be made, nor may the disqualification of a judge be waived, even by consent of the parties. *Id.* This issue may be raised at any time. *Id.* However, the prohibitions as set out by the Texas Constitution and article 30.01, which require the disqualification of a judge hearing a case in which he has acted as counsel, have been construed such that the judge must have participated in the very same case that is now before him. *Id.* at 319.

█ In the present case, Madden argues that Judge Warder must be disqualified because she was also the prosecutor on one of the prior convictions used to enhance his punishment. We find that this does not constitute sufficient grounds to disqualify Judge Warder. In the past, this court has held that the fact a trial judge has personally prosecuted or defended a defendant in past cases does not disqualify him from presiding over a trial where a new offense is charged. *Nevarez v. State,* 832 S.W.2d 82, 88 (Tex.App.— Waco 1992, pet. ref'd).

Moreover, Madden cites a Texas Court of Criminal Appeals case, *Ex parte McDonald,* 469 S.W.2d 173 (Tex.Crim.App.1971), as supporting his position. In *McDonald,* the defendant was convicted of felony theft and sentenced to life imprisonment. *Id.* at 174. The trial judge served as the prosecutor on one of the two prior felonies used to enhance the felony theft conviction. *Id.* The Court of Criminal Appeals overturned McDonald's sentence on grounds of disqualification. *Id.* at 175.

Madden claims that the *McDonald* holding supports his position that a judge should be disqualified if he was the prosecutor in a prior case against the defendant that is now being used only for enhancement purposes. However, Madden has misread the facts of *McDonald.* The court did not overturn the sentence in *McDonald* because the judge in the theft case had previously prosecuted a case against the defendant. *Id.* at 174–75. Instead, the court found that one of the prior cases was void and unavailable for purposes of enhancement, because the judge who presided over the revocation hearing in the prior conviction had actively prosecuted the defendant in that same case. *Id.* Therefore, we find that *McDonald* has no relevance to the present case.

In the alternative, Madden urges this court to further expand the disqualification rules. He argues that there should be no distinction between a judge who has participated in the case he is presently involved in and a judge who has prosecuted a prior case that is now being used against the defendant for enhancement purposes in the present case. He claims that the introduction of prior convictions for the purpose of enhancing punishment plays a crucial role in the sentencing process. He argues that when the pen packets are introduced into evidence, the judge's name becomes part of the record. Madden states that this is highly prejudicial to the jury because it indicates that the judge may desire them to impose a longer sentence. However, this is merely speculation, and Madden provides no authority to support this position. In addition, this notion goes against a jury's duty to be neutral and impartial in its decisions. *See* TEX. CONST. art. I, § 10.

Madden also argues that the judge may be subtly or even subconsciously influenced by his previous position in the case. This also contradicts a judge's duty to be neutral and impartial, and there is no evidence that a prior case would effect a judge in such a manner. *See* TEX. CONST. art. V, § 11.

Moreover, the State points out that there are approximately 180 prosecutors in the Dallas County District Attorney's Office, many of whom have left the office to be

elected to judicial offices. Many defense attorneys have also left their practices for judicial positions. If the disqualification rule was to be extended to include prior cases, it would greatly increase the cost and administration of justice. *Hathorne v. State*, 459 S.W.2d 826, 833 (Tex.Crim.App.1970).

Madden also claims that allowing a judge to preside over a case where he prosecuted the defendant in a previous case used for enhancement purposes violates his due process rights under both the Texas Constitution and the United States Constitution.

We find that Madden's constitutional arguments are without merit. He cites no cases in support of his argument. With regard to the U.S. Constitution, Madden cites as authority only federal cases that construe a federal statute, which provides that the judge shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned. 28 U.S.C.A. § 455(a) (West 1993). Madden admits there is no similar state statute applicable to state court proceedings. In addition, Madden does not cite any applicable state cases to support his position. Therefore, his first three points are overruled.

In his fourth and fifth points of error, Madden claims that he received ineffective assistance of counsel under the United States and Texas Constitutions because counsel did not file a motion to recuse the trial judge.

The right to effective counsel is guaranteed under both the federal and state constitutions. U.S. Const. amend VI; Tex. Const. art. I, § 10. The United States Supreme Court established the federal constitutional standard for determining ineffectiveness of counsel and when it is prejudicial in *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). This test was adopted by the Texas Court of Criminal Appeals in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986).

An individual has a right to effective, not errorless representation. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App. 1986). To prove up ineffective assistance of counsel, it must be shown that the performance was deficient and that it prejudiced

the jury. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In reviewing an ineffective assistance of counsel claim, it must be shown that: (1) the alleged act or omission was outside the range of professionally competent assistance; and (2) whether a different outcome would have occurred if counsel's alleged error had not occurred. *Hernandez v. State*, 726 S.W.2d 53, 54–57 (Tex.Crim.App. 1986). In making this determination, the court must look at counsel's representation of the defendant as a whole, and not merely at isolated errors. *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex.Crim.App.1993). Moreover, the representation of the defendant should be viewed from defense counsel's perspective at trial, and not with 20–20 hindsight. *Phetvongkham v. State*, 841 S.W.2d 928, 931 (Tex.App.—Corpus Christi 1992, pet. ref'd) (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).

In the present case, Madden claims that he is entitled to a new trial on grounds of ineffective assistance of counsel based solely on the fact that counsel failed to file a motion to recuse at trial. As mentioned above, failure to file such a motion waives a party's right to raise the issue on appeal. Here, however, there was no basis to file a motion to recuse in the first place. Judge Warder was fully qualified to preside over this case. The fact that Judge Warder prosecuted a prior case used for enhancement in the present case does not present a conflict of interest. Moreover, the mere failure to file an appropriate pretrial motion shall not be categorically deemed as ineffective assistance of counsel. *Martinez v. State*, 824 S.W.2d 688, 690 (Tex.App.—El Paso 1992, pet. ref'd).

From the totality of the representation, it is clear Madden received effective assistance of counsel. Counsel filed several pre-trial motions, extensively cross-examined each of the State's witnesses, objected at various points in the proceedings where appropriate, moved for an instructed verdict, and presented two witnesses on Madden's behalf. Moreover, he objected to the jury charge on guilt-innocence and presented persuasive closing arguments at both stages of

Madden's trial. We find that Madden received more than effective representation.

■■■ Madden also claims that article I, section 10, of the Texas Constitution should provide a greater degree of protection to a defendant in determining what is ineffective assistance. The Texas courts have construed the right of effective assistance of counsel in accordance with federal law and the Sixth Amendment to the United States Constitution. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Hernandez,* 726 S.W.2d at 54–57. Madden argues that this right should be expanded under the Texas Constitution. *See Heitman v. State,* 815 S.W.2d 681, 690 (Tex. Crim.App.1991). Madden argues that the particular language in article I, section 10, is more expansive than its federal counterpart. These provisions read as follows:

Article I, section 10, of the Texas Constitution provides: In all criminal prosecutions, the accused shall ... have the right of *being heard* by ... counsel.

TEX. CONST. art. I, § 10. (emphasis added). The Sixth amendment of the United States Constitution provides: In all criminal prosecutions, the accused shall enjoy the right ... *to have assistance* of counsel for his defense.

U.S. CONST. amend VI. (emphasis added).

Madden claims that the right to be heard has a greater effect than merely the right to assistance. He claims that the right to be heard contemplates an active, rather than advisory role by trial counsel. However, Madden fails to provide any authority on this argument. The Texas Court of Criminal Appeals has expressly adopted the *Strickland* test, and we find no reason to further expand this rule. We overrule Madden's fourth and fifth points of error.

■■■ In his sixth point of error, Madden argues that the trial court erred by admitting evidence of an extraneous offense. A defendant must be tried for the offense with which he is charged. He may not be tried for a collateral crime or for being a criminal generally. TEX.R.CRIM.EVID. 401, 404(b); *Albrecht v. State,* 486 S.W.2d 97, 100–01 (Tex.Crim.App.1972). An extraneous offense may only be admitted if it meets a two-part test: (1) the extraneous offense must be relevant to a material issue in the case; and (2) the probative value of the evidence must outweigh the prejudicial effect. *Montgomery v. State,* 810 S.W.2d 372, 377 (Tex.Crim. App.1990).

■■■ Madden complains that the trial court erred in admitting into evidence an extraneous offense which consisted of his statement that he would shoot anyone, including the police, who tried to stop him from leaving the state. However, we find that Madden has waived his complaint. Madden successfully preserved the complaint when he objected to Damon Bell's testimony. However, Madden failed to object to the evidence when Officer Park later offered the same testimony. The failure of counsel to object to Park's testimony not only waived Madden's objection to that testimony, but cured any error from the court's overruling the objection to Bell's previous testimony. *Butler v. State,* 769 S.W.2d 234, 241 (Tex.Crim. App.1989), *overruled on other grounds, Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App. 1991). A defendant must object every time that objectionable evidence is offered. *Id.* Therefore, we overrule Madden's sixth point of error.

In his seventh and eighth points of error, Madden complains that he received ineffective assistance of counsel under both the United States and Texas Constitutions because counsel did not properly object to the testimony concerning Madden's telephone statements.

As mentioned above, to show ineffective assistance of counsel, the United States and Texas Constitutions require that: (1) counsel's performance be deficient and not reasonably effective; and (2) that this deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 668, 104 S.Ct. at 2052; *Hernandez,* 726 S.W.2d at 54–57. A defendant must meet both prongs in order to show ineffective assistance of counsel. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Madden claims that counsel's failure to object to Officer Park's testimony regarding Madden's telephone conversation was an inadmissible extraneous offense and was an error of "con-

stitutional magnitude" which deprived him of effective assistance of counsel. He claims that this statement goes to an extraneous offense of making threats against a police officer.

We must first determine if Madden's statements on the telephone qualify as an inadmissible extraneous offense. Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

TEX.R.CRIM.EVID. 404(b).

 An extraneous offense may only be admitted if it meets a two-part test: (1) the extraneous offense must be relevant to a material issue in the case; and (2) the probative value of the evidence must outweigh the prejudicial effect. *Montgomery*, 810 S.W.2d at 377. The evidence that is offered must be shown to be relevant apart from its tendency to make the defendant look like a criminal. Moreover, the presumption is that the evidence is more probative than prejudicial. *Lee v. State*, 866 S.W.2d 298, 303 (Tex.App.— Fort Worth 1993, pet. ref'd). Madden claims that Officer Park's testimony that Madden said he would leave the state and kill any police that tried to stop him was not relevant and did not meet any of the exceptions in Rule 404(b) for allowing extraneous offenses into evidence. Although this rule enumerates specific purposes for when evidence is admissible, the list is not exclusive. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993). One such exception is "consciousness of guilt." In *Torres v. State*, 794 S.W.2d 596, 598–600 (Tex.App.—Austin 1990, no pet.), the court stated:

> A 'consciousness of guilt' is perhaps one of the strongest kinds of evidence of guilt. It is consequently a well accepted principle that any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a 'consciousness of guilt' may be received as a circumstance tending to prove that he committed the act with which he is charged.

*Id.* at 598 (quoting 2 R. RAY, LAW OF EVIDENCE § 1538 at 242, (Texas Practice 1980)). We find that the statements admitted into testimony went to Madden's "consciousness of guilt" and are therefore relevant. Madden's statements go to the fact that he was planning to flee prosecution and that he would kill anyone who got in the way of his attempt to escape.

 Madden also argues that the evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice. While it is true that making threats against the police could be considered inflammatory, this alone does not render the evidence inadmissible. It is only when the danger of unfair prejudice substantially outweighs the probative value of the evidence that it must be excluded. *Lee v. State*, 866 S.W.2d 298, 303 (Tex.App.— Fort Worth 1993, pet. ref'd). We find that the evidence does not unduly prejudice Madden.

 Madden claims ineffective assistance because his counsel failed to object to Officer Park's testimony. However, there is no ineffectiveness where such an objection would not be valid. *See Poullard v. State*, 833 S.W.2d 273, 278 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Therefore, we find that Madden was not denied effective assistance of counsel, and his point is overruled.

 In his last point of error, Madden argues that the evidence of serious bodily injury to the complainant is legally insufficient to show aggravated assault. In reviewing a claim of insufficient evidence, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). On review to this court, the sufficiency of the evidence must be measured against a correct charge that corresponds to the allegations of the indictment. *Moore v. State*, 739 S.W.2d 347, 348 (Tex.Crim.App.1987). In pertinent

part, the indictment alleges that Madden did "unlawfully then and there knowingly and intentionally cause serious bodily injury to another, namely, Antrum Donell, hereinafter called complainant, by shooting said complainant with a firearm."

The trial court instructed the jury:

Now if you find from the evidence beyond a reasonable doubt that ... the defendant, Roland Jerome Madden, did intentionally or knowingly shoot Antrum Donell with a firearm and thereby cause serious bodily injury to Antrum Donell, as alleged in the indictment, or if you find from the evidence beyond a reasonable doubt that ... the defendant, Roland Jerome Madden, did then and there intentionally or knowingly shoot Antrum Donell with a firearm and thereby cause bodily injury to Antrum Donell, as alleged in the indictment, then you will find the defendant guilty as charged.

Madden does not challenge the legal sufficiency of whether he used a deadly weapon or that he caused Donell bodily injury, only that the evidence that he caused the complainant serious bodily injury was legally insufficient. Aggravated assault does not normally require the State to prove both that the defendant caused serious bodily injury *and* that the defendant used a deadly weapon. A person can be found guilty of the offense of aggravated assault if he commits an assault with a deadly weapon and causes bodily injury *or* if he commits an assault and causes serious bodily injury. TEX.PENAL CODE ANN. § 22.02 (Vernon 1991).

We find that it is clear that a rational trier of fact could find from the evidence that Madden was guilty of aggravated assault under either alternative stated in the charge. With regard to the first alternative, Madden does not dispute that he used a firearm. The record shows that two witnesses testified that Madden used a gun. Moreover, he admits in his brief that Donell suffered bodily harm. Thus, a rational trier of fact could have found that Madden met the requirements of aggravated assault under the first alternative.

With regard to the second alternative, we need only look at the sufficiency of the evidence concerning serious bodily injury. Serious bodily injury means bodily injury—pain, illness or impairment of the physical condition of the body that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any body member or organ. TEX.PENAL CODE ANN. § 1.07(a)(34) (Vernon 1991). However, determining what facts constitute a serious bodily injury can only be determined on an ad hoc basis. *Moore v. State*, 739 S.W.2d 347, 352 (Tex.Crim.App.1987). The record shows that Madden shot Donell in the left hip with a .45 caliber handgun. According to the testimony of both Donell and Bell, Donell faded in and out of consciousness after he was wounded. Donell also testified that he was in the hospital for a day and a half. He stated that he could not walk for three to four weeks after the shooting, and agreed with counsel that he had suffered a protracted impairment of a bodily member. *See Coshatt v. State*, 744 S.W.2d 633, 636 (Tex.App.—Dallas 1987, pet. ref'd) (holding that damaged vertebrae and orders to stay in bed for six weeks were protracted impairment of a bodily member and sufficient evidence of serious bodily injury); *Brown v. State*, 605 S.W.2d 572, 575 (Tex.Crim.App. 1980) (holding that victim's broken nose was sufficient evidence of serious bodily injury); *Hatfield v. State*, 377 S.W.2d 647, 649 (Tex. Crim.App.1964) (holding that the injured party suffered serious bodily injury because he had a cut lip, lost some teeth, had a stiff neck, was hospitalized for about a week, and was unable to work); *Cf Black V. State*, 637 S.W.2d 923, 926 (Tex.Crim.App.1982) (holding that gunshot wound to victim's thigh was insufficient evidence of serious bodily injury where he suffered no loss of use of the limb). Moreover, Donell testified that he has permanent scar tissue where the bullet entered and exited his body.

We find due to the severity of Donell's injuries, and the fact that he was unable to walk for a month due to his gunshot wound is

sufficient evidence of a protracted impairment of a bodily member. We believe that viewed in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Donell suffered a serious bodily injury. Madden's last point of error is overruled.

The judgment is affirmed.